### E. V. Tuttle v. James Carraher, Appellant.

**Intoxicating liquors:** SINGLE ROOM.   The keeping of a large refrigerator with an ice chest and adjoining storage room for beer, within a single room in which the retail liquor business was conducted, having a street opening for ice and a door from the ice chamber to the storage room, but which was nailed up, was not a violation of the statute requiring that a saloon shall be conducted in a single room with but one entrance.

**Same:** EMPLOYEES: LISTING OF NAMES.   Draymen and carriers engaged in hauling liquors from a railway station or car and putting the same in a refrigerator in a saloon room are not persons employed about a saloon, who are required by statute to be listed with the county auditor, but are engaged in a separate employment having no connection with the saloon business.

Same: INTOXICATED PERSON: EVIDENCE. The evidence in this action is held insufficient to show that.defendant allowed an intoxicated person in his saloon, when in that condition; or to establish the charge that defendant failed to list an employee before he began work.

*Appeal from Carroll District Court.*—HON. M. E. HUTCHINSON, Judge.

WEDNESDAY, JANUARY 15, 1913.

SUIT to enjoin a liquor nuisance resulted in decree as prayed. The defendant appeals.—*Reversed.*

*L. H. Salinger* and *Ralph McClean,* for appellant.

*M. S. Odle,* for appellee.

LADD, J.—The petition alleged that defendant owned certain premises in Liddendale, and therein kept, with intent to sell as a beverage in violation of law, intoxicating liquors, and prayed that defendant be enjoined from so maintaining said premises as a nuisance. The first division of the answer was a general denial, and the second admitted defendant was operating a saloon on the premises in question, but specifically alleged the performance of the conditions precedent exacted by section 2448 of the Code as essential to the bar of the mulct law. Appellant assumed the burden of proving performance of these, but insists that, in the absence of other allegation in the petition and of any reply, other matters pertaining to the operation of the saloon might not be inquired into. Whether this is so need not be determined, for we reach the conclusion on the merits that the court erred in entering the decree.

I. In the single room with door opening on a public business street there was an ice box eighteen feet long and

nine feet wide. It was eight feet four inches high, with ceiling more than a foot and a half farther up, and would hold a car load of beer. Along the east side of the refrigerator next the outside door was the ice chamber or rack. Through an opening from the outside ice was put into the chamber. This opening was about two feet wide and five feet high, with the lower part seven or eight feet above the surface. There was a door from the ice chamber into the room where the beer was stored, but it had been nailed up, and was so kept. This box was not fastened to the building save by its weight, and the inside, because of the low temperature, could not well be used as a place for dispensing or drinking intoxicants. It was not a separate room, but a box in the single room for the convenient and hygienic keeping of the beer, where readily accessible as required for consumption. Manifestly the hole through which ice was passed into the ice chamber afforded no entrance to or exit from the room, and the refrigerator was not a separate room within the meaning of the mulct law, exacting that the retail liquor business be carried on in a single room, with but one entrance or exit. *State v. Donahue,* 120 Iowa, 154.

**1. INTOXICATING LIQUORS: single room.**

II. The defendant employed different draymen with helpers to haul cases, kegs, and barrels of beer from the railway station or cars, and put them in the refrigerator. In doing so they necessarily crossed the saloon from the door to the refrigerator and appellee contends that their names should have been listed with the county auditor. Paragraph 4 of section 2448 requires that ''a list of names of all persons employed about the place shall be filed with the county auditor and no person shall be permitted behind the bar except those whose names are so listed.'' This has reference to those in some manner connected with the operation of the saloon as bartenders, porters, and the like. The last clause is intended to exclude every one whether employees or not when not so listed from behind the bar, but the first clause does not limit those who

**2. SAME: employees: listing of names.**

shall be listed to persons who go behind the bar. Any one actually engaged about the premises and in some way in the work of carrying on the business of operating the saloon must be listed as an employee. *Pumphrey v. Anderson*, 141 Iowa, 201. Those not participating therein are not included. In a sense a carpenter called to repair a defect in the floor or a glazier to replace a broken light, or a plumber to stop a leak, are employed about the place, but no one would contend that any of these should be included in the portion of the statute quoted. This is for the reason that what they may do is merely incident to but without connection with the business carried on in the place. The same is true of the draymen. They are not servants of the defendant, though they render services for compensation, and in doing so they necessarily enter the saloon, and carry the beer to its destination. But this can no more be said to connect them with the operation of the saloon than hauling goods to a mercantile establishment can be said to render them participants in conducting it. They are common carriers pursuing an independent employment, having no connection with the business, and the circumstance that in hauling the beer they necessarily pass over the floor of the saloon is a mere incident to the performance of their duty as such, and does not constitute them employees engaged about the place within the meaning of the statute.

III. Paragraph 10 of section 2448 of the Code declares that "no minor, drunkard or intoxicated person shall be allowed in the room." One Brown was employed as porter, and it was contended he was a drunkard, or at least was allowed in the saloon when intoxicated. The evidence was not sufficient to characterize Brown as a drunkard. What he would have become had he a chance is mere matter of conjecture, and of no concern in this inquiry. Nor do we regard the evidence sufficient to justify the inference that he was allowed about the saloon when intoxicated. D. Borcherding, mayor of the town, declined to swear that he ever saw him intoxicated, but

3. SAME: intoxicated person: evidence.

indicated that he had seen him under the influence of liquor sometimes, and that he not only used profane, but vulgar, language, and that he did not use this as often when not under the influence of liquor. Wm. Rohrbeck, marshal of the town, testified that Brown "gets pretty well top-heavy. I suppose he does every chance he gets. I think he would get that way more than once a week." Probably Brown got "top-heavy" too often, but the record falls short of indicating that he was allowed in defendant's saloon when in this condition.

IV. The name of Brown was listed with the county auditor as an employee about the saloon in December, 1911, but it is contended that this was not done before he began work as a porter. Rohrbeck testified that about December 20th, and after Brown began work, he examined the list on the file with the county auditor, and that his name was not then on the list. The witness on cross-examination said he examined the list because he was assessor, and later that his official duties had nothing to do with it. He had been an applicant for permission by the town council to operate the saloon when defendant was granted this, and admitted that, should anything happen to defendant, he was planning to run the saloon himself if he could "get a chance." The defendant swore that Brown's name was listed before he began work, but could not recollect the date, and the auditor's record did not show this. Both were interested witnesses with nothing indicating the one to be of greater credibility than the other save that defendant, in view of his situation, would be the more likely to know whether Brown began work before his name was listed. We are inclined to the conclusion that the alleged omission to put the name on the list for a few days was not established by a preponderance of the evidence. It follows that the petition to enjoin should have been dismissed. —*Reversed.*